**HALLIBURTON COMPANY, Plaintiff,**

v.

**SCHLUMBERGER TECHNOLOGY CORPORATION, Defendant.**

Civ. A. No. H–85–5464.

United States District Court,
S.D. Texas,
Houston Division.

Oct. 25, 1989.

**1434**

Fay E. Morisseau, Vinson & Elkins, Houston, Tex., Joel M. Freed, Burns, Doane, Swecker & Mathis, Alexandria, Va., for plaintiff.

Ronald L. Palmer, Baker & Botts, Houston, Tex., Richard G. Berkley, and Dana M. Raymond, Brumbaugh, Graves, Donohue & Raymond, New York City, for defendant.

## MEMORANDUM AND ORDER

LAKE, District Judge.

■ The Court has found that Halliburton's patents are unenforceable because of inequitable conduct, and Schlumberger now seeks reimbursement of the attorneys' fees and expenses it incurred in defending what it contends is an "exceptional case" under 35 U.S.C. § 285. To obtain such relief Schlumberger must establish, by proof of clear and convincing evidence, both that the case is exceptional and that the Court should exercise its discretion to award attorneys' fees and expenses. *Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed.Cir.1985).

■ 35 U.S.C. § 285 does not explain what makes a case "exceptional." Opinions of the Federal Circuit teach that not every case of inequitable conduct is an exceptional case. *E.g., Gardco Manufacturing, Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1215 (Fed.Cir.1987). To prove a case exceptional imposes more stringent requirements than proof of inequitable conduct. *Argus Chemical Corp. v. Fibre Glass–Evercoat Co.*, 812 F.2d 1381, 1386–87 (Fed.Cir.1987) (additional views of Judge Nies). Although there is no uniform definition of what makes a case "exceptional,"

[t]he exercise of discretion in favor of such an allowance *should be bottomed upon* a finding of *unfairness or bad faith in the conduct of the losing party,* or some other inequitable consideration of similar force, *which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees* which prevailing litigants normally bear.

*Rohm & Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688, 691 (Fed.Cir.), *cert. denied,* 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984), *quoting Park–In Theatres, Inc. v. Perkins,* 190 F.2d 137, 142 (9th Cir.1951) (emphasis in original).

■ It is not possible to enumerate all of the factors that can be relevant to this analysis. The Court may consider the conduct of the patentee before the PTO and during subsequent litigation and "any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.*, 781 F.2d 198, 201 (Fed.Cir.1986). It is also important to remember that the remedy in exceptional cases is not damages against the losing party; it is merely some degree of reimbursement to the successful party. Depending upon how "exceptional" a case is, reimbursement may include attorney's fees and expenses, and such expenses of litigation as expert witness fees, as well as pre- and post-judgment interest. *Mathis v. Spears,* 857 F.2d 749, 757–61 (Fed.Cir. 1988).

■ The Court makes the following findings of fact relevant to the exceptional case and exercise of discretion issues in this case.[1]

1. Halliburton failed to disclose four different material prior art patents to the PTO. Each of these undisclosed patents was more material than the prior art disclosed by Halliburton and the prior art referenced by the examiner.

2. Halliburton knew and appreciated the materiality of the Neufeld '129 patent, the Texaco patents, and the skip-a-beat patents while its applications for the patents in suit were pending before the PTO.

*Stevens & Co. v. Lex Tex Ltd.,* 822 F.2d 1047, 1053 (Fed.Cir.1987).

---

1. These findings are not an attempt to catalog all the facts considered by the Court or urged by the parties as relevant to these issues. *See J.P.*

At oral argument on the exceptional case issue counsel for Halliburton agreed that this case would be exceptional if the evidence showed that Halliburton had been aware of the materiality of the prior art patents, and in particular, the Neufeld '129 patent, to the patents in suit. According to Halliburton's counsel, however, the evidence only showed that Halliburton was aware that the Neufeld '129 patent was material *to its TMD tool*, not to the patents in suit. The Court disagrees.[2]

First, the evidence shows that the patents in suit were intended to cover and did cover the TMD tool. Dr. Dan Arnold, one of the inventors of the '444 patent, testified that the unique feature of both the TMD tool and the patents in suit was "dual exponential processing." He knew the Halliburton patents were directed at the TMD tool and the "dual processing method." Dr. Arnold also testified that the filing of the second applications for the patents in suit was important to him because they were directed at the TMD tool. Furthermore, Halliburton admitted in the Pretrial Order that the TMD tool embodies the inventions claimed in the patents in suit. (See Halliburton's proposed Findings of Fact on the Issue of Infringement 1.1, 1.2, and 2.10 and paragraphs 9 and 10 of its Complaint.) In light of Halliburton's awareness of the relationship between the TMD tool and the patents in suit, Halliburton's knowledge that the Neufeld '129 patent was relevant to the TMD tool was thus also probative of its knowledge that the Neufeld '129 patent was material to the patents in suit.

Second, the evidence discussed in Finding 12 of the Court's September 19, 1989, Memorandum and Order unmistakably shows that Halliburton knew that the Neufeld '129 patent was material to the patents in suit. 722 F.Supp. 324. For example, Dr. Arnold testified that the '129 patent was a problem for Halliburton because Halliburton was within months of marketing the TMD tool. When he saw Equation 4 in the '129 patent and the Halliburton pat-

ents, it "rang his bell." Arnold testified that Halliburton wanted to buy the '129 patent to avoid having it asserted against the TMD tool. He admitted attending a meeting with the President of Halliburton's Welex Division where it was discussed that the teachings of Neufeld's '129 patent were close to the teachings of the patents in suit. Mr. Beard also knew of the materiality of the Neufeld '129 and Texaco patents to the patents in suit. In particular, after June of 1982 Beard was heavily involved with the acquisition of the Neufeld '129 patent and the drafting of broader claims based on the Neufeld '129 disclosure to cover the inventions of the TMD tool that were already covered by the patents in suit.

3. Although Beard testified that he never intended to act inequitably toward the PTO, Halliburton offered no explanation for Beard's failure to give conscious consideration whether to cite the Neufeld '129 or Texaco patents to the PTO.

4. Halliburton offered no credible explanation for not citing the skip-a-beat patents to the PTO.

Having heard and read all the evidence dealing with inequitable conduct, observed the demeanor of the witnesses, and considered the arguments of counsel, the Court concludes, in light of all the facts, that this is an exceptional case and that Schlumberger should be reimbursed for its attorneys' fees and expenses, including expert witness fees, reasonably incurred in defending this action. No reimbursement will be allowed for fees, costs, or expert fees incurred in connection with the prosecution of Schlumberger's infringement counterclaim. No prejudgment interest will be awarded on such amounts but post-judgment interest will be awarded.

Counsel for Schlumberger is to submit to counsel for Halliburton within ten business days from the receipt of this Memorandum and Order a detailed itemization of all fees and expenses, together with sufficient back-up detail, covered by this Order. If the parties cannot agree and submit to the Court within 30 days a stipulation of the

2. Findings 19, 27 and 28 of the Court's September 19, 1989, Memorandum and Order discuss Halliburton's knowledge of the Texaco and skip-a-beat patents to the patents in suit.

amount of such fees and expenses, an evidentiary hearing will be held on December 15, 1989, at 3:30 p.m. to resolve the matter.