**TARKETT, INC., Plaintiff,**

v.

**CONGOLEUM CORP., Defendant.**

**Civ. A. No. 91–4830.**

United States District Court,
E.D. Pennsylvania.

June 30, 1994.

See also: 144 F.R.D. 289.

---

William T. Hangley, Hangley Connolly Epstein Chicco Foxman & Ewing, Philadelphia, PA, Edward V. Filardi, Teri D. Silvers, White & Case, New York City, G.T. Delahunty, William R. Robinson, Harold Haidt, Brooks, Haidt, Haffner & Delahunty, Carol A. Witschel, Cecilia O'Brien Lofters, White & Case, New York City, for Tarkett, Inc.

Joseph F. Posillico, Jeffrey M. Navon, Synnestvedt & Lechner, Philadelphia, PA, William F. Cavanaugh, Jr., Patterson, Belknap, Webb & Tyler, New York City, for Congoleum Corp.

Jeffrey M. Navon, Synnestvedt & Lechner, Philadelphia, PA, for A.J. Manning, Dr.

Diana S. Donaldson, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Armstrong World Industries, Inc.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Following trial in this patent infringement action, the parties have both filed post-trial motions for partial judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). In the alternative, plaintiff seeks a new trial. Defendant additionally seeks a partial amendment of the judgment, as well as attorneys' fees and costs. For the reasons set forth below, the parties' motions for judgment as a matter of law, plaintiff's motion in the alternative for a new trial, and defendant's motion for amendment of the judgment all will be denied. However, as the Court finds this case to be exceptional and worthy of an award of fees, defendant's motion for attorneys' fees will be granted, subject to a determination of the appropriate amount of such fees.

## I. BACKGROUND

Plaintiff Tarkett, Inc., ("Tarkett") initiated this action against defendant Congoleum Corp. ("Congoleum"), alleging that certain of Congoleum's vinyl sheet flooring products have infringed Tarkett's United States Letters Patent No. 5,015,516 (the " '516 patent"). Congoleum denied that it had infringed the patent, and further asserted as affirmative defenses, and also as an independent counterclaim, that Tarkett's patent was invalid and unenforceable. In addition, Congoleum asserted a counterclaim, alleging that Tark-

ett is liable for violating the antitrust laws in seeking to monopolize the market through enforcement of a patent it allegedly obtained as a result of fraud on the patent office.[1]

Following extensive discovery and a three-week jury trial on liability, the jury returned a verdict finding that, assuming patent validity, Congoleum's "Triumph" and "Dynasty" dry blend products had infringed the '516 patent, both literally and under the doctrine of equivalents. The jury further found that, assuming patent validity, Congoleum's modified "Triumph" and "Dynasty" products had not infringed the '516 patent under the doctrine of equivalents, but that the modified products had infringed some, but not all, of the disputed claims of the '516 patent.[2] The jury found, though, that any infringement was not willful.

Despite these findings of infringement based on the assumption that the '516 patent was valid, the jury further found that the disputed claims of the '516 patent were anticipated by a single prior art reference and were obvious in light of the prior art.[3] These findings support a conclusion that the disputed claims of the '516 patent are invalid. Additionally, the jury found that Tarkett had engaged in inequitable conduct in procuring the '516 patent and that Tarkett had unclean hands,[4] which findings support a conclusion that the '516 patent is unenforceable. On the basis of these findings, the Court entered judgment in favor of Congoleum on Tarkett's claim of patent infringement and on Congoleum's counterclaim of patent invalidity and unenforceability. The Court further entered judgment in favor of Tarkett on Congoleum's antitrust counterclaim, as the jury did not find that Tarkett had engaged in fraud on the patent office in procuring the '516 patent.

## II. DISCUSSION

### A. *Judgment as a Matter of Law.*

■ The Court may only grant judgment as a matter of law if no reasonable jury could have arrived at the verdict that was returned. *See Simone v. Golden Nugget Hotel & Casino,* 844 F.2d 1031, 1034 (3d Cir. 1988); *Link v. Mercedes–Benz of N. Am., Inc.,* 788 F.2d 918, 921 (3d Cir.1986). The evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the party who won the verdict. *See Rotondo v. Keene Corp.,* 956 F.2d 436, 438 (3d Cir.1992).

#### 1. *Inconsistency in Jury's Verdict.*

Both parties have moved for judgment as a matter of law with respect to literal infringement of the '516 patent by Congoleum's modified "Triumph" and "Dynasty" products. As noted above, the jury found that, assuming patent validity, Congoleum's modified products literally infringed some, but not all, of the disputed claims of the patent. In particular, the jury found that the modified products infringed claims 2–5, 14–16, 19, 27, & 29, but that those accused products did not infringe claims 1, 12, 26, & 28.

■ These findings are inconsistent, and no reasonable jury could have arrived at this result. Claims 2–5, 14–16, 19, 27, & 29 are dependent upon independent claims 1, 12, 26, & 28. "One may infringe an independent claim and not infringe a claim dependent on that claim. The reverse is not true. One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim." *Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1552 n. 9 (Fed.Cir.1989).

While the parties do not dispute that these findings are inconsistent, their proposed

---

**1.** *See generally Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965).

**2.** The infringement and validity of claims 1–5, 12, 14–16, 19, & 26–29 of the '516 patent were in dispute at trial.

**3.** On the other hand, the jury did not find that Congoleum had proven that the '516 patent failed to describe the claimed invention suffi-

ciently, that the claims of the patent failed to define sufficiently the boundaries of the invention disclosed in the specification, or that the patent failed to set forth the best mode known by the inventor for carrying out the claimed invention.

**4.** The jury did not find, however, that Congoleum had proven that Tarkett had engaged in patent misuse.

remedies are, unsurprisingly, diametrically opposed. On the one hand, Tarkett suggests that the Court grant it judgment as a matter of law with respect to literal infringement of the independent claims. On the other hand, Congoleum proposes the Court grant it judgment as a matter of law with respect to literal infringement of the dependent claims.

The Court will not grant either party judgment as a matter of law. Whether the modified products fell within the literal scope of the disputed claims is a distinction without a difference, so long as the jury found the claims of the patent to be invalid.[5] Therefore, the inconsistency in the jury's findings was without effect. *Cf. Slade Gorton & Co. v. Millis*, 794 F.Supp. 175, 177 (E.D.N.C. 1992) (defendant was entitled to judgment because jury's finding that all patents in case were invalid was dispositive, despite jury's failure to answer verdict questions on infringement).

In the alternative, the party who would be entitled to judgment "as a matter of law" on this issue is Congoleum. The only case which appears directly on point is *Diasonics, Inc. v. Acuson Corp.*, No. C–91–3118–DLJ, 1993 WL 248654, at *10–11 (N.D.Cal. June 24, 1993). As in the case *sub judice*, in *Diasonics* the jury had returned a verdict finding that certain dependent claims were infringed but that the independent claims upon which they depended had not been infringed. *Id.* The district court set aside the jury's findings and determined as a matter of law that the dependent claims were not infringed. *Id.* Tarkett has identified no countervailing authority, and the Court has found none.[6] Thus, assuming that the Court found that the entry of judgment as a matter of law was appropriate in this case, the Court would enter judgment in favor of Congoleum on the issue of literal infringement of dependent claims 2–5, 14–16, 19, 27, & 29 by

---

**5.** This is not to say that Tarkett lost its presumption of patent validity. On the contrary, as the Court repeatedly instructed the jury during the charge, the patent was entitled to the presumption of validity. Moreover, each of the infringement interrogatories on the verdict sheet specifically reminded the jury that they were to assume the patent was valid for purposes of determining infringement.

Tarkett cites to a question the jury asked of the Court during deliberations as evidence that the jury did not afford the patent its due presumption in evaluating the issue of infringement. During deliberations, the jury asked the Court, through a written note read in open Court, "If the jury has reached a decision on both issues (validity of the patent and the antitrust action) as set forth in the instructions on page 10 of the verdict sheet [concerning the general verdict] must there be a unanimous position on each of the individual questions # 1–24. In other words, if the answer to a specific question is irrelevant to the final verdict on the two issues must the answer to each individual question be agreed to unanimously." Tarkett believes that this question demonstrates that the jury somehow disregarded the Court's instructions in its consideration of the issues of infringement. This contention is entirely speculative. For example, when it asked the question, the jury might have already decided the infringement questions (questions # 1–13), as well as the questions of validity (questions # 14–18) and fraud (question # 22), but have been split on one or more of the enforceability questions (questions # 19–21). Juries are presumed to "act in accordance with the instructions given them." *City of Los Angeles v.*

*Heller*, 475 U.S. 796, 798, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986). The Court will thus decline Tarkett's invitation to speculate based on the jury's note that the jury somehow disregarded the Court's instructions regarding the presumption of patent validity.

**6.** Tarkett's only attempt to distinguish this case is to observe that in *Diasonics*, the court explained to the jury that a dependent claim could not be infringed unless the claim on which it depends is also infringed. However, in the case at bar, the jury was also instructed as to the difference between independent and dependent claims. The Court here specifically instructed the jury, "An independent claim is a claim that is complete within itself without reference to any other claim. In contrast, a dependent claim refers back to, or depends upon, another claim. A dependent claim includes all the subject matter set forth in the claim on which it depends, in addition to all new subject matter that it sets forth itself. You must consider all the subject matter in considering infringement or invalidity of a dependent claim." Therefore like *Diasonics*, if the jury had followed the Court's instructions, it could not reasonably have found that the dependent claims were literally infringed after having found the independent claims were not infringed. That is to say, in each case, the jury's finding that the independent claims were not infringed was both consistent with the court's instructions and supported by the evidence, but the jury's finding that the dependent claims were infringed conflicted with the court's instructions and, therefore, the finding must fall.

Congoleum's modified products, determining that no such infringement had occurred.[7]

## 2. Sufficiency of the Evidence.

In addition to the parties' having moved for judgment as a matter of law on the basis of the inconsistency in the jury's finding of literal infringement of the dependent claims of the '516 patent by Congoleum's modified products, the parties have further moved for respective judgments as a matter of law based on the alleged insufficiency of the evidence. In particular, Tarkett seeks judgment as a matter of law on this basis with respect to literal infringement of the independent claims by the modified products, as well as with respect to infringement of all the disputed claims by the modified products under the doctrine of equivalents, willful infringement, invalidity by anticipation, invalidity for obviousness, unenforceability from inequitable conduct, and unenforceability from unclean hands. Congoleum, on the other hand, seeks judgment as a matter of law on the basis of insufficient evidence with respect to literal infringement of the dependent claims by the modified products, as well as with respect to invalidity for failure to disclose the best mode, and

unenforceability from fraud on the patent office. Applying the standards noted above, upon review of the record and the parties' submissions, and viewing all the evidence and reasonable inferences drawn therefrom in the light most favorable to the respective non-moving parties, the Court concludes that the evidence was sufficient for a reasonable jury to have reached the verdict that was returned in this case.

## B. Plaintiff's Motion for a New Trial.

Tarkett has moved, in the alternative, for the Court to order a new trial. However, "[n]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir.1991). Reviewing the whole record under this high standard, the Court concludes that a new trial in this action is not warranted.

## C. Defendant's Motion to Amend.

In addition to seeking judgment as a matter of law on certain issues, Congoleum has

---

7. There is yet another reason why the parties' motions for judgment as a matter of law concerning the infringement of the dependent and independent claims by the modified products lack merit. Both parties have framed their proposals for reconciling the jury's inconsistency as motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), but the issue first must be analyzed under Federal Rule of Civil Procedure 49 to determine the nature of the verdict returned in this case. The Court views the verdict returned in this case as a general verdict with interrogatories under Rule 49(b), as opposed to a special verdict under Rule 49(a). *See Simmons v. City of Philadelphia*, 947 F.2d 1042, 1058 (3d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992). In making this determination, the totality of the court's instructions, both oral and written, are considered. *Id.* The Court provided the jury with a verdict sheet that consisted of a series of 24 interrogatories to answer. At the conclusion of this series, the verdict slip explained in detail the general verdicts which the jury could reach, both on the patent claim and on the antitrust counterclaim. In other words, the verdict sheet itself called for the jury to analyze the evidence in light of the court's legal instructions in order to reach a general finding for Tarkett or Congoleum on the patent action and a general finding for Tarkett or Congoleum on the antitrust

action, in addition to making findings of actual or ultimate facts in responding to the interrogatories. As such, the verdict in this case falls within Rule 49(b).

Under Rule 49(b), where the jury's interrogatory responses and general verdict are harmonious, the court "shall" enter judgment. Fed.R.Civ.P. 49(b). Here, although there was an inconsistency among certain of the jury's interrogatory responses concerning infringement, the interrogatories as a whole were harmonious with the general verdict. That is, because the jury made findings which rendered the patent invalid and unenforceable, the general verdict had to be in Congoleum's favor on the infringement action, regardless of whether the modified products fell within the literal scope of the dependent claims and independent claims.

Second, even assuming that the interrogatory answers and the general verdict were somehow inconsistent, such that under Rule 49(b) the court should have returned the jury for further deliberation or order a new trial, any objections based on the inconsistency must be raised before the jury is dismissed or else they are waived. *Simmons,* 947 F.2d at 1056–57. As neither party preserved such an objection in this case, waiver bars their assertion at this post-trial stage for the first time.

further moved for amendment of the judgment to reflect explicitly certain findings of the jury. Congoleum would have the court amend the judgment to particularize the underlying bases for the Court's judgment in its favor on patent infringement, invalidity, and unenforceability. Of course, if the Court were inclined to do this, it would also reflect in its amended judgment the underlying basis for judgment in Tarkett's favor on the antitrust action, namely that there was no fraud on the patent office.

■ The Court is not well-disposed to amend the judgment to particularize the underlying findings. "A motion to amend the judgment under Fed.R.Civ.P. 59(e) is appropriate if the court in the original judgment has failed to give relief on a claim on which it has found that the party is entitled to relief." *Continental Casualty Co. v. Howard*, 775 F.2d 876, 883 (7th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986). In the case at bar, the Court rendered judgment in Congoleum's favor on the patent infringement claim and on its counterclaim of patent invalidity and unenforceability. The Court further declared that the disputed claims are invalid and that the '516 patent is unenforceable. The judgment fully

afforded Congoleum all the relief to which it was then entitled.[8] As it does not appear that further particularization would afford Congoleum any greater actual relief than it has already obtained, the Court declines to amend the judgment.[9]

### D. *Defendant's Motion for Attorneys' Fees and Costs.*

■ Section 285 of title 35 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party [in a patent infringement action]." 35 U.S.C. § 285.[10] In general, however, a finding that a case is exceptional does not necessarily mean that fees should be awarded. *See Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 814–15 (Fed.Cir. 1990). Likewise, while a finding of inequitable conduct in procuring a patent in the patent office may justify finding that a case is exceptional and that it warrants an award of attorneys' fees, *see Korody–Colyer Corp. v. GM Corp.*, 760 F.2d 1293, 1294–95 (Fed. Cir.1985), a finding of such inequitable conduct does not automatically compel either a finding that a case is exceptional or an award of fees. *See Machinery Corp. v. Gullfiber AB*, 774 F.2d 467, 473 (Fed.Cir.1985); *Stan-*

8. Of course, since that time, the Court has determined that Congoleum is also entitled to relief in the form of attorneys' fees. Once the appropriate amounts are determined in accordance with the procedure set forth below, the Court may provide for such relief in a separate judgment. *See* Fed.R.Civ.P. 54(d)(2)(C).

9. Congoleum originally sought, *inter alia*, a declaration of non-infringement. While there may be some benefit to having such a declaration included within the judgment itself, in this case Congoleum is not entitled to such relief. The jury found that, assuming validity, certain accused Congoleum products did infringe the claims of the '516 patent. Thus although Congoleum was ultimately entitled to judgment in its favor on the infringement claim as a result of invalidity and unenforceability, a general declaration of non-infringement in the form Congoleum suggested is not warranted.

10. Congoleum was clearly the prevailing party with respect to the claim of patent infringement and the counterclaim of invalidity and unenforceability. This is not to say that Congoleum prevailed on every interrogatory submitted to the jury. For example, the jury did find that, assum-

ing patent validity, at least some of Congoleum's accused products "infringed" the claims of the '516 patent, although the jury did not find that any such infringement was willful. Similarly, while Tarkett "prevailed" at least on certain interrogatories, including some of those concerning infringement by Congoleum, Congoleum nonetheless ultimately prevailed on all dispositive aspects of the infringement action on the strength of its affirmative defenses of invalidity and unenforceability. As the prevailing party in the infringement action and the invalidity and unenforceability counterclaim, Congoleum is entitled to costs pursuant to Federal Rule of Civil Procedure 54(d). *See Engelhard Indus. v. Sel–Rex Corp.*, 255 F.Supp. 620, 622 (D.N.J.1966) (costs awarded to party prevailing on basis of patent invalidity, despite opposing party's argument that court had found in its favor in part on certain non-dispositive issues), *aff'd*, 384 F.2d 877 (3d Cir.1967). Ordinarily costs are taxed by the Clerk of the Court, after which the Court may review the Clerk's action. Fed.R.Civ.P. 54(d)(1). In this case, the Court itself will determine costs in the first instance in accordance with the procedure set forth below, thereby allowing the Court to determine appropriate costs and attorneys' fees simultaneously.

*dard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 455 (Fed.Cir.1985).

■ In the case at bar, the jury specifically found by clear and convincing evidence that Tarkett had engaged in inequitable conduct in procuring the '516 patent and that Tarkett had unclean hands which had an immediate and necessary relation to the enforcement of the '516 patent. Moreover, pursuant to the Court's instructions in its charge, the jury's finding of inequitable conduct necessarily included a finding that Tarkett intended to deceive the patent office, despite the duty of candor and good faith imposed upon patent applicants.

As noted above, the Court found sufficient evidence in the record to support the jury's verdict. The Court must further review the record in its totality to ascertain whether the case is exceptional and also whether attorneys' fees are warranted. The record shows that Tarkett was far from forthright with the patent office in its disclosure of prior art. First, Edward Lussi, Tarkett's principal inventor with respect to the '516 patent, admitted on the stand that the Smaragd product anticipated at least one claim of the '516 patent. (Trial Tr. of 8/30/93 (Lussi)) More particularly, Lussi's testimony, together with that of John Floyd, a Tarkett attorney, and in light of the testimony of expert Franklin Burnett, exposes a clear lack of candor in Tarkett's failure to acknowledge to the patent office that the Smaragd product included a printed pattern layer, a material characteristic which supposedly distinguished the '516 patent. (Trial Tr. of 8/30/93 (Lussi), 9/2/93–9/3/93 (Floyd), 9/7/93 (Burnett)) For example, at trial, Mr. Lussi testified that he "knew it all the time" that the Smaragd product had a printed pattern layer. (Trial Tr. of 8/30/93 (Lussi)) The testimony of Anders Konow and Andrew Manning, who were Tarkett employees during relevant time periods, also supports inferences of Tarkett's knowledge, but nondisclosure, of Smaragd's printed pattern layer. (Trial Tr. of 8/27/93 (Manning), 9/3/93 (Konow)) Indeed, Tarkett affirmatively represented to the patent office that Smaragd lacked the printed pattern or design, (Def.Ex. 3776 p. 119), promoted its own proposed patent as having a printed pattern by

means of such processes as screen printing, (Pl.Ex. 1, col. 6, line 59), yet was clearly aware that Smaragd also had a pattern or design and that a rotary screen process was used to create Smaragd's pattern. (Trial Tr. of 8/30/93 (Lussi)) Other documents from Tarkett further bolster the inference of Tarkett's nondisclosure of Smaragd's pattern, including a descriptive Smaragd brochure in Tarkett's possession that was withheld from the examiner. (Def.Exs. 4064, 4269A, 4279A; Pl.Ex. 29) The record similarly shows that Tarkett misled the patent office as to when Tarkett became aware of Smaragd's anticipating characteristics. (Def.Exs. 4064, 3776 p. 88; Trial Tr. of 9/7/93 (Burnett)) Apart from the Smaragd prior art, the record also reveals that Tarkett did not disclose to the examiner the Kauffman '264 patent, although it was recognized as prior art by the European Patent Office in a search on the '516 patent and was disclosed to Tarkett. (Def.Ex. 1555D; Trial Tr. of 9/3/93 (Floyd), 9/8/93 (Burnett)) Finally, Tarkett did not disclose as prior art a Canadian patent invented in part by Kenneth Faust, who himself was later actively involved in the prosecution of the '516 patent on behalf of Tarkett. (Def.Exs. 4506, 3776 p. 74; Trial Tr. of 8/25/93 (Faust), 9/8/93 (Burnett))

In short, Tarkett's inequitable conduct was pervasive and egregious. As outlined above, Tarkett engaged in a series of deceptions to procure and preserve its '516 patent. This extended well beyond any mere isolated lapse in disclosing a potential prior art reference. Instead, it represented a general breakdown in the candor and good faith with which Tarkett was expected to deal with the patent office. The result was the intentional concealment of at least three material references in their own corners of the globe, beyond the purview of the examiner. Worse still, the conduct was carried out at the highest and most responsible levels of the company, including some of the company's chief inventors and lawyers (not trial counsel), and it continued for several years. While the parties generated much heat at trial trying to define what a "pattern" is, the only "pattern" that an observer could not fail to recognize was plaintiff's pattern of deception.

Therefore, based upon a review of the ample evidence, the Court finds that this case is exceptional within the meaning of section 285, and the Court further finds, as a matter within the Court's discretion, that an award of reasonable attorneys' fees is warranted. *See Halliburton Co. v. Schlumberger Technology Corp.*, 722 F.Supp. 1433, 1434–35 (S.D.Tex.1989) (finding case of inequitable conduct to be exceptional and awarding attorneys' fees, where patentee failed to disclose four prior art references that it knew were material). A determination of the appropriate amount of such award must await submissions providing detailed support for the requested fees. Accordingly, the Court will establish a schedule for submissions and objections to provide for prompt resolution of this matter.

An appropriate Order follows.