817 F.2d 104
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William EVANS, Plaintiff-Appellant.
v.
David W. TROUTMAN; et al. Defendants-Appellees.
 No. 85-3583.
 United States Court of Appeals, Sixth Circuit.
 April 29, 1987.
 
 Before KEITH and JONES, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff appeals the jury verdict for defendants in this civil rights action brought under 42 U.S.C. Sec. 1981 (1982). He also appeals the district court's grant of a directed verdict to defendants on plaintiff's claim under 42 U.S.C. Sec. 1983 (1982). Because we find no error in the trial court proceedings, and because sufficient evidence supported the jury's verdict, we affirm the judgment below.
 
 
 2
 Plaintiff William Evans is a black male. He was employed by the Summit County Sheriff's Department as a deputy in the Detective Bureau prior to 1981. In 1981, many layoffs occurred in the Sheriff's Department and plaintiff was transferred to the Jail Division, where he retained his rank as a supervising sergeant. Defendants allege that in April of 1981 they learned that plaintiff was continuing to do detective work when he was supposed to be working as the security sergeant in the jail. A memo was sent out, explaining that such conduct was contrary to department regulations. The next year, however, the Chief Deputy learned that plaintiff had attempted to charge a third-party call to the detective bureau. A subsequent investigation of long distance telephone numbers revealed that a number of third-party calls billed to the detective bureau had originated from plaintiff's home, from his other workplace, and from his jail security post.
 
 
 3
 After further investigation confirmed that plaintiff had made the long-distance calls, a meeting with plaintiff was scheduled. On August 3, 1982, the Chief Deputy, the investigator, plaintiff, plaintiff's attorney, and two others, met at the Sheriff's office. At that meeting, the Chief Deputy asked plaintiff whether he had made long-distance calls and charged them to the Sheriff's office. Plaintiff admitted that he had. The Chief Deputy then attempted to find out the number and the nature of those calls. Plaintiff said that he was not sure of the number of calls and that they were not personal calls. The Chief Deputy then began to ask him about specific calls to a woman. At this point, plaintiff's attorney began to interrupt and to refuse to let plaintiff explain the phone calls. The attorney simply said that "[o]ur contention is that all calls that were made were on official business." Supp.App. at 154. The attorney would not let his client answer any more questions without "records." Soon after this, the meeting ended. On August 9, plaintiff was terminated for making unauthorized long-distance calls and charging them to the Sheriff's office.
 
 
 4
 Plaintiff appealed his termination to the State of Ohio Board of Personnel Review. In January 1983, following a full hearing, an administrative law judge ("ALJ") held that plaintiff's phone calls did not concern official business. The ALJ accordingly held that plaintiff was properly discharged. The ALJ found plaintiff's claims of disparate treatment and discrimination to be irrelevant in that proceeding. The Board of Review upheld the ALJ's decision.
 
 
 5
 According to defendants, the Sheriff's Department learned of other telephone abuses on August 30, 1982, after plaintiff's discharge. Plaintiff alleges that the defendants knew or should have known of the abuses before his discharge. At any rate, on August 30, 1982, Sergeant Chevrier, a white male, notified the Department that he had made direct dial long distance calls to his brother. The officer investigating Sergeant Evans did not want to conduct an investigation of both third party billing and direct dial billing calls at the same time. He testified that he therefore waited until the completion of his investigation of third party billing calls before he began investigating Chevrier. The investigation of Chevrier's calls was completed on February 7, 1983.
 
 
 6
 On March 7, 1983, a report by the investigator revealed that 49 other employees had also improperly charged long-distance calls. The personnel director, just hired in March, determined that all these employees could not be fired. The Sheriff's Department told Sergeant Chevrier that he would be retained if he made restitution, took a 90-day suspension and a reduction in rank, and waived his appeal rights. At this time, plaintiff was offered reinstatement if he would pay back the $673.40 he had charged and waive his rights to sue. He would receive back pay, but would lose 90 days back pay as a suspension and would be reduced in rank. Defendants contend that Evans and Chevrier were both asked to do more than the other offenders because they were higher in rank (supervisors) and because they had charged more calls. Plaintiff refused reinstatement. Chevrier refused to accept the part of his deal waiving appeal, and so he was discharged.
 
 
 7
 Plaintiff filed suit in district court on November 14, 1983. He charged that the Sheriff, David Troutman, and the County of Summit had violated his due process rights under Sec. 1983, and had discriminated against him in violation of Sec. 1981 and Title VII. The court granted a directed verdict for defendants on the Sec. 1983 claim. A jury found that defendants had not treated white employees differently from plaintiff and had not discriminated against plaintiff in violation of Sec. 1981. The judge adopted these findings to render judgment for defendants on the Title VII claim.
 
 
 8
 Plaintiff's main argument on appeal is that his pretermination hearing did not meet the requirements set forth in Cleveland Bd. of Educ. v. Loudermill, 105 S.Ct. 1487 (1985), and so the district court erred in granting a directed verdict on his due process claim. In order to review the propriety of the grant of a directed verdict we must determine whether there was "substantial evidence from which the jury could find in favor of the party against whom the motion [was] made." Coffy v. Multi-County Narcotics Bureau, 600 F.2d 570, 579 (6th Cir.1979). The Supreme Court in Loudermill held that prior to termination a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 105 S.Ct. at 1495. In the instant case, defendants held a meeting with plaintiff and his attorney; they set forth their belief that he had charged long-distance calls for no official reason; and they asked him to explain the calls. Defendants were attempting to particularize their inquiry about the calls when plaintiff's attorney prevented plaintiff from explaining any further. Thus, any denial of plaintiff's opportunity to defend himself was caused by his attorney, not the defendants' unwillingness to hear his explanation. Accordingly, we hold that the district properly granted a directed verdict on plaintiff's due process claim under Sec. 1983.
 
 
 9
 Plaintiff also argues on appeal that Fed.R.Evid. 408 should have prevented the district court from admitting the defendants' offer to reinstate plaintiff, since the offer was conditioned on an agreement not to sue. This offer of reinstatement was made after EEOC charges were filed, but before this suit was initiated in district court. Rule 408 states that evidence of an offer to compromise a claim is not admissible to prove "liability for or invalidity of the claim or its amount." But "[t]his rule ... does not require exclusion when the evidence is offered for another purpose." The decision to admit evidence of a compromise offer "for another purpose" under Rule 408 "is within the discretion of the trial court; the court's decision will not be reversed in the absence of an abuse of discretion amounting to 'manifest error.' " Belton v. Fibreboard Corp., 724 F.2d 500, 505 (5th Cir.1984). In the case before us, the compromise offer was properly admitted "for another purpose." Rule 408 is intended to encourage settlement of suits by forbidding a party from pointing to her opponent's settlement offer as proof that the opponent thought he would lose. The instant defendants surely did not present their offer of reinstatement to show that they thought they would lose the discrimination suit. Instead, they introduced the reinstatement offer to rebut plaintiff's contention that they treated him differently from white employees. Plaintiff necessitated such proof by his contentions in the complaint that defendants had singled him out for treatment different from the treatment of white offenders. For instance, his complaint alleged that defendants discriminated:
 
 
 10
 by failing to allow progressive discipline as it relates to plaintiff while allowing progressive discipline as it relates to white employees similarly employed and for the same offenses.
 
 
 11
 When such allegations had been made, a reinstatement offer which would make plaintiff's punishment equal to a white officer's punishment was highly relevant to defendants' discriminatory intent. The district court therefore did not abuse its discretion in admitting the reinstatement offer as proof that defendants "chose to treat plaintiff in the same manner as another person in the same category was treated."
 
 
 12
 We have carefully considered the other issues raised by plaintiff on appeal and find them to be without merit. Accordingly, we AFFIRM.