DONNELLY CORPORATION, Plaintiff,

v.

GENTEX CORPORATION, Defendant.

No. 1:93 CV 530.

United States District Court,
W.D. Michigan,
Southern Division.

March 13, 1996.

Grant J. Gruel, Thomas R. Behm, Gruel, Mills, Nims & Pylman, Grand Rapids, MI, John Augustine O'Brien, Fitzpatrick, Cella, Harper & Scinto, New York City, for plaintiff.

William L. Fette, Cornell, Dalzell, Fette, Ramey, & Shek, Kalamazoo, MI, John Tramontine, Fish & Neave, New York City, for defendant.

## *OPINION*

ENSLEN, Chief Judge.

This matter is before the Court on the motions of both Plaintiff Donnelly Corporation and Defendant Gentex Corporation to preclude the other from introducing certain evidence at the upcoming jury trial of this matter. Of the many motions, most will be denied, some will be granted and others will be granted in part and denied in part.

### I.

This controversy stems from the United States Patent Office's grant of a patent for a "Perimeter Coated Electro–Optic Mirror" to Donnelly Corporation on November 19, 1991. The inventors of this device, Niall Lynam and Richard Gahan (who are employees of Donnelly) prior to the issue of the patent were working on means of making the Donnelly electro-optic mirrors more aesthetically pleasing. The electro-optic mirrors they designed are used for the purpose of dimming the reflections of headlights from traffic

while traveling at night. They discovered in connection with the '112 patent that by coating the perimeter of the mirror with a darkly colored seal that one could construct the mirror with a thinner bezel since the reflection of the seal would be imperceptible.

Donnelly has charged in connection with this lawsuit that Defendant Gentex has infringed the patent by making and selling electro-optic mirrors which embody the '112 patent. Thus, Donnelly seeks relief under Title 35 United States Code Sections 271, 283, 284 and 285.

Gentex, however, has relied on several defenses. Among them are that the patent is invalid because under Title 35 United States Code Sections 101, 102 and 103 the invention is not novel (having been anticipated by prior art), was in public use or sale more than a year in advance of the patent, and was obvious to a person of ordinary skill in the art at the time the patent was granted. Gentex also asserts that to the extent that there was any infringement (which it denies) Donnelly is not entitled to lost profit damages and should only receive small royalty damages under Title 35 United States Code Section 284.

In light of the issues pertinent to this cause, the parties have filed many motions *in limine* concerning the upcoming jury trial.

## II.

■ Preliminarily, the Court notes that it has authority under Federal Rules of Evidence 103, 104, 402 and 403 (as well as the Court's inherent authority to manage trials) to make rulings concerning preliminary questions as to the admissibility of evidence. *Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984); *Colorado National Bank v. First National Bank,* 459 F.Supp. 1366, 1368 (W.D.Mich. 1978); *Johansen v. Combustion Engineering, Inc.,* 834 F.Supp. 404, 405 (S.D.Ga.1993), *aff'd,* 67 F.3d 314 (11th Cir.1995). Such rulings are a matter of judgment and are within the wide discretion of the Court. *Bills v. Aseltine,* 52 F.3d 596, 607 (6th Cir.1995), *cert. den.,* —— U.S. ——, 116 S.Ct. 179, 133 L.Ed.2d 118 (1995).

## III.

### A. Presumption of Validity

■ First of all, both parties have filed motions *in limine* concerning evidence to prove the substantive elements of liability in this patent infringement case. To begin the analysis, Gentex has brought a motion to preclude Donnelly from referring to the presumption of the patent's validity in the presence of the jury. This motion relates to Title 35 United States Code Section 282, which provides in pertinent part that a "patent shall be presumed valid . . . [and] [t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." Gentex does not challenge the existence of the presumption; rather, Gentex argues that the presumption functions as a procedural rule for observance by the Court (in the context of Rule 50 which relates to directed verdicts) and that the jury should not be informed of it since it could only distract the jury from its true function of determining under Title 35 whether Gentex has proven by clear and convincing evidence that the patent is invalid. This argument is buttressed by the language of Federal Rule of Evidence 301 (which dictates the procedural effect of presumptions in federal courts) and the observations of Judge Learned Hand, who long ago wrote concerning legal presumptions:

> The presumption . . . is a mere rule for the conduct of the trial. It puts upon the bailee the risk of a directed verdict if he does not meet it, but it does no more; once he has done so, it disappears from the case. Thus it can never concern the jury . . . If the trial is properly conducted, the presumption will not be mentioned at all. . . .

*Alpine Forwarding Co. v. Pennsylvania R. Co.,* 60 F.2d 734, 736–37 (2nd Cir.1932), *cert. den.,* 287 U.S. 647, 53 S.Ct. 93, 77 L.Ed. 559 (1932).

Upon consideration of such argument, it appears that Gentex is trying to unrealistically limit the legal instructions of the Court. The American Bar Association Sample Jury Instructions for patent infringement cases

include an instruction that the patent is "presumed to be valid and enforceable" and that for this reason the alleged infringer has the burden to attack the patent's validity. Such instructions do not wrongly describe the effect of the presumption as evidentiary, but rather simply explain to the jury why the burdens are so assigned. It is for this reason that the Federal Circuit has upheld instructions relating to the presumption of validity. *Mendenhall v. Cedarapids, Inc.,* 5 F.3d 1557, 1563–64 (Fed.Cir.1993), *cert. den.,* —— U.S. ——, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994); *Bio–Rad Laboratories v. Nicolet Instrument Corp.,* 739 F.2d 604, 615 (Fed.Cir.1984), *cert. den.,* 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984); *Tarkett, Inc. v. Congoleum Corp.,* 156 F.R.D. 608, 611 n. 5 (E.D.Pa.1994). Furthermore, the assertion by Gentex that the presumption "disappears" after evidence is presented itself misstates the effect of the presumption according to the Federal Circuit. *Sinskey v. Pharmacia Ophthalmics, Inc.,* 982 F.2d 494, 498 (Fed.Cir.1992), *cert. den.,* 508 U.S. 912, 113 S.Ct. 2346, 124 L.Ed.2d 256 (1993); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1358–60 (Fed.Cir. 1984), *cert. den.,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1534 (Fed.Cir. 1983). The Federal Circuit's interpretation of the presumption under Title 35 is especially persuasive here since, as noted by the Plaintiff, Rule 301 does not technically dictate the effect of this presumption since this is an "Act of Congress" presumption which is outside the scope of Rule 301. *See* 1 *Weinstein's Evidence,* Section 301[3] (1995). In any event, this motion *in limine* does not raise any concerns which cannot be sufficiently addressed by this Court adequately informing the jury of the nature of this legal presumption, which it will do at the appropriate time. Accordingly, the motion *in limine* (Dkt. No. 517) will be denied.

## B. Extent of Infringement

█ Another significant legal issue raised by Gentex is whether to limit testimony concerning infringement to Gentex mirrors with a bezel less than six millimeters. Gentex requests this relief because Donnelly has consistently maintained in this litigation that the '112 patent invention (the color matched seal) was created for the purpose of permitting a narrow bezel. For example, Donnelly stated in the final pretrial order that the "invention of the narrow bezel patent solved a long standing problem in the art of electro-optic rearview mirrors, namely how to reduce the size of the bezel required in such devices." Final Pre–Trial Order, Para. III.A.6. This type of limitation would be very significant to Gentex because it so happens that about 95 percent of the alleged infringing Gentex products do not have bezels of less than 6 millimeters.

█ While Gentex's motion makes a certain amount of rough sense (*viz.,* Gentex has not taken advantage of the alleged invention in the making of these products), it is inconsistent with the Title 35 of the United States Code as interpreted by the United States Supreme Court and the Federal Circuit Court of Appeals. According to the prevailing law, an invention is legally defined by the limitations of the patent claims. 35 U.S.C. Section 112; *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 339, 81 S.Ct. 599, 600–01, 5 L.Ed.2d 592 (1961); *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.,* 868 F.2d 1251, 1258 (Fed.Cir.1989). Thus, to prove infringement means to prove that the infringing device contains each of the limitations of the patent claim in issue. *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 607, 70 S.Ct. 854, 855–56, 94 L.Ed. 1097 (1950); *Genentech, Inc. v. Wellcome Foundation Ltd.,* 29 F.3d 1555, 1561 n. 6 (Fed.Cir.1994); *Corning, supra* at 1258.[1] In this particular case, the pertinent claims define the invention as having a black or color matched seal. Nothing is stated in the limitations as to the size of the bezel. Though it was explained in the specification that a dark seal would allow for a narrower bezel, it is also apparent from the specification that a wider bezel could be used. The

---

**1.** Whether an infringing device does itself contain the elements of the claim is a question of fact which the jury must resolve at trial. *United* *States v. Telectronics, Inc.,* 857 F.2d 778, 784 (Fed.Cir.1988), *cert. den.,* 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 423 (1989).

narrow bezel depicted is the best, but not only, means of practicing the invention. Therefore, as a matter of law, the claim is not limited to electrochromic mirrors with narrow bezels.[2] Thus, Donnelly will be permitted to seek damage for infringement as to Gentex products with wide bezels.

■ Furthermore, Donnelly will also be permitted in the context of presenting its case as to non-obviousness to present evidence that there was a long-felt but unsolved need for the dark seal invention. This is because such evidence is a "secondary consideration" as to whether the invention was non-obvious under Title 35 United States Code Section 103. *In re Newell,* 891 F.2d 899, 902 (Fed.Cir.1989); *Uniroyal Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1053 (Fed.Cir.1988), *cert. den.,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966). Accordingly, Gentex's motion *in limine* (Dkt. No. 513) will be denied.

■ This above determination also bears on another motion *in limine* filed by Donnelly. Donnelly is now contending that Gentex should not be permitted to introduce evidence at trial that certain of its alleged infringing products have wide bezels (or other dissimilarities to the patent specification and claims). Since the burden is on Donnelly to prove that the Gentex products infringe the claims, then Gentex should be permitted to show the jury the alleged infringing products so that they can reach a determination. *See Corning, supra.* Also, presuming that Donnelly prevails on its claims of infringement, then the jury will also have to consider the nature of the infringing products and the extent of copying to determine if the infringement was willful (so as to entitle Donnelly to greater damages). *See American Medical Systems, Inc. v. Medical Engineering Corp.,* 6 F.3d 1523, 1530 (Fed.Cir.1993),

*cert. den.,* —— U.S. ——, 114 S.Ct. 1647, 128 L.Ed.2d 366 (1994).

Donnelly opposes this evidence, not based on the evidence rules, but because of discovery violations. Gentex has failed to produce certain mirrors now in issue because it did not formerly believe that bezel size was relevant. While in the light of this litigation Gentex clearly should have produced the mirrors, the sanction of totally precluding the mirrors from the jury's consideration would unduly frustrate the jury in its determination of both infringement and damages and would arguably cause unjust results. Accordingly, the Court determines that the appropriate discovery sanction under Rules 26 and 37 is to order Gentex to immediately supplement its interrogatory responses and to provide samples of the mirrors to Donnelly immediately (and in no event later than the beginning of the trial of this matter).[3] Accordingly, the motion is granted to the extent that Gentex is ordered to provide the additional discovery prior to trial. Otherwise, the motion *in limine* (Dkt. No. 523) will be denied.

■ Gentex has also filed a motion *in limine* which bears on another aspect of the claim construction of claims 44 and 50 of the '112 patent. Specifically, Gentex has requested that Donnelly be precluded from arguing that the sale of CD Marketing mirrors in 1983 did not invalidate claims 44 and 50 (under the on-sale bar provision of 35 U.S.C. Section 102(b)) because the CD Marketing Mirrors failed to meet Federal Vehicle Safety Standard No. 111. Gentex contends that the only issue pertinent to the on-sale bar issue is whether the CD Marketing Mirrors contained the elements of claims 44 and 50 (which are different from the No. 111 standards) and whether they were on sale more than a year in advance of the patent application.

■ However, Gentex' argument unduly simplifies the nature of the on-sale bar analy-

---

2. Claim construction under the patent statutes is the role of the Court. *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 822 (Fed.Cir.1992). Claims are to be construed in light of other claims, prior art, the prosecution history and the specification. *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1118 (Fed.Cir.1985).

3. Gentex is also warned that future noncompliance with court orders will be dealt with severely.

sis. Sales which are solely for the purpose of experimentation do not give rise to an on-sale bar defense. *Paragon Podiatry Laboratory, Inc. v. KLM Labs, Inc.,* 984 F.2d 1182, 1185 (Fed.Cir.1993); *A.B. Chance Co. v. RTE Corp.,* 854 F.2d 1307, 1311 (Fed.Cir.1988); *Armco, Inc. v. Cyclops Corp.,* 791 F.2d 147 (Fed.Cir.1986). In this case, the claim is made that these few CD Marketing Mirrors were sold for the purpose of experimentation. This claim is buttressed by the fact that the mirrors did not meet the required federal safety standard, and therefore could not have been sold for normal highway usage or commercial resale. Therefore, it appears that evidence of the safety standard is relevant to the issues to be tried and should not be precluded. Accordingly, the motion *in limine* (Dkt. No. 514) should be denied.

### C. Prior Litigation

█ Plaintiff Donnelly has also requested that pursuant to Federal Rule of Evidence 408 that the Court exclude evidence of certain settlements that Donnelly and Gentex reached with competitors relating to the licensing of patents. The first is an agreement between Donnelly and Excel Industries in 1993 to license Excel to use Donnelly modular window assemblies without royalty. The second is an agreement between Donnelly and Libbey–Owens–Ford Company of July 1993 to license Donnelly to use Libbey–Owens–Ford Company's patent for certain modular window products for a royalty fee of 20.75 cents per modular window assembly. The third is a settlement agreement between Gentex and Chrysler Corporation under which Gentex agreed to pay Chrysler a royalty of 20 cents per automatic dimming mirror sold (not to exceed a total of $187,500).

█ Federal Rule of Evidence 408 provides in pertinent part that:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount....

From the mere text of the Rule, it is obvious that the Rule itself does not preclude evidence of these compromises in this case because the offers to compromise the claims do not concern the claim being litigated in this case. *Broadcort Capital Corp. v. Summa Medical Corp.,* 972 F.2d 1183, 1194 (10th Cir.1992); *see also Korn et al. v. Fireman's Fund Ins. Co.,* 27 F.3d 566, 1994 WL 264263 (6th Cir. June 15, 1994) (unpublished opinion); *Evans v. Troutman,* 817 F.2d 104, 1987 WL 37221 (6th Cir. April 29, 1987) (unpublished opinion); *Ensing v. Vulcraft Sales Corp.,* 830 F.Supp. 1017, 1018 (W.D.Mich. 1993). Therefore, the question becomes not whether the evidence should be excluded under Rule 408, but whether the evidence is admissible under Federal Rule of Evidence 403.

█ To answer this question, the Court must refer to the patent issues in this case. In this case, the Plaintiff is maintaining that it is entitled to at least a reasonable royalty under Title 35 United States Code Section 284 for the alleged infringement. In the absence of a set royalty rate in the industry, case law has defined a "reasonable rate" as what a willing hypothetical licensee would pay a licensor on the date the infringement started. *Rite–Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1554 (Fed.Cir.1995), *cert. den.,* —— U.S. ——, 116 S.Ct. 184, 133 L.Ed.2d 122 (U.S.1995); *State Industries, Inc. v. Mor–Flo Industries, Inc.,* 883 F.2d 1573, 1580 (Fed. Cir.1989), *cert. den.,* 493 U.S. 1022, 110 S.Ct. 725, 107 L.Ed.2d 744 (1990). In making such hypothetical calculations, the jury is to consider all relevant business factors at the time of the infringement. *Unisplay, S.A. v. American Electronic Sign Co.,* 69 F.3d 512, 517 (Fed.Cir.1995); *Georgia–Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp. 1116, 1121 (S.D.N.Y.1970), *aff'd and modified,* 446 F.2d 295 (2nd Cir.1971); *Ristvedt–Johnson, Inc. v. Brandt, Inc.,* 805 F.Supp. 557 (N.D.Ill.1992).

Therefore, initially the Court must consider whether the evidence sought to be offered would provide a fair basis for determining a reasonable royalty rate. Even apart from the fact that these agreements are litigation settlements, their relevance to establishing a

reasonable royalty rate in this case is questionable because they concern products which are arguably noncomparable and because it is difficult to generalize from rates in a few cases to an industry standard. *See Trell v. Marlee Electronics Corp.,* 912 F.2d 1443, 1445 (Fed.Cir.1990). Furthermore, the Federal Circuit, as well as other courts, has squarely held that in patent infringement litigation such as this the rates paid in the industry as a result of settlement negotiations may not be considered since they do not accurately reflect what a willing licensee would pay a willing licensor in an arm's length negotiation. *American Original Corp. v. Jenkins Food Corp.,* 774 F.2d 459, 464 (Fed.Cir.1985); *Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1078–79 (Fed. Cir.1983); *Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.,* 860 F.Supp. 1448, 1452 (C.D.Cal.1993). Accordingly, the Court determines that these settlement agreements should be precluded under Federal Rule of Evidence 403 as more prejudicial than probative. Therefore, the motion *in limine* (Dkt. No. 530) will be granted.

■ Next, Donnelly raises the issue of whether Gentex should be precluded in this litigation from referring to prior litigations between Donnelly and Gentex. Specifically, these litigations are two previous cases filed in this district and tried before the Honorable Benjamin F. Gibson. The first of these cases determined that Donnelly had infringed Gentex's U.S. Patent No. 4,902,108. The second of these cases determined that Donnelly had infringed Gentex's U.S. Patent No. 5,128,799. Both of these cases concern patents on electrochromic mirrors patented by Gentex and infringed by Donnelly.[4] Donnelly now claims that evidence of these litigations is irrelevant and prejudicial and should be excluded under Rules 401, 402 and 403.

This Court is certainly sympathetic to Donnelly's position relating to the prior liti-

gations. It is hard enough to explain to a jury the complicated and factually intensive issues involved in this litigation without trying to further explain what has transpired in two previous patent litigations. *See Mendenhall,* 5 F.3d at 1574. Unfortunately, the facts of the prior litigations are highly relevant to the damage issues in this cause. This is because the prior law suits concerned Gentex's patent on electrochromic mirrors which were sold prior to 1994 (the date of Donnelly's introduction of its glare-free mirror line). It is Gentex's position that Donnelly can have little or no lost profits prior to 1994 since any electrochromic mirrors it would have sold prior to that date would have violated a Gentex patent. Therefore, for the jury to make an appropriate calculation of damages under Title 35 United States Code Section 284 it must consider the prior patent litigation. Furthermore, under this code section, for the jury to determine a hypothetical reasonable royalty it must also consider the legal situation of the parties with respect to the relevant patents in 1991. *See Unisplay, supra; Georgia–Pacific, supra; Ristvedt–Johnson, supra.* Finally, to the extent that the Plaintiff is seeking multiple damages because of a willful violation, the evidence of the prior litigations is relevant as to the extent of copying by the Defendant. The prior litigation history is also relevant to the issue of the non-obviousness of the patented invention since the commercial success of the patented invention is being attributed to features other than the black seal. *See In re Sneed,* 710 F.2d 1544, 1551 (Fed.Cir.1983). Accordingly, for all these reasons, the Court believes that the prior litigation is relevant under Rule 401 to the issues in this case. The Court also believes that confusion and unfair prejudice can be prevented through appropriate instructions and by appropriate questioning by counsel. Accordingly, the motion *in limine* (Dkt. No. 528) will be denied.[5]

---

4. Gentex has also moved in connection with these patents to limit certain evidence relating to Donnelly's lost profit damages. *See infra* at 24–25. However, since Gentex's basis for this motion is a highly contested, factually intensive matter, it is not an appropriate basis for an *in limine* ruling. Accordingly, this motion (Dkt. No. 507) will be denied.

5. Interestingly, Gentex has also made a motion to exclude evidence of other Donnelly patents and patent litigation (referring to Patent Nos. 5,073,012, 5,355,245, 5,340,503, 5,424,865 and 5,416,31 and the pertinent litigation cases). However, it is abundantly clear that facts relating to those patents and cases are pertinent to damage issues for the same reasons that facts

] Another evidentiary issue in this case surrounding other litigations is whether to permit evidence pertaining to European Patent No. 285724. Gentex asks that such evidence be excluded for the reason that the European Patent System and its procedures and determinations are simply irrelevant under Federal Rules of Evidence 401 and 402 to the matters to be decided in this case. While this point itself is well-received, Donnelly has significantly clarified this issue by identifying the particular documents which it intends to produce. These are affidavits of engineers employed by Gentex which state that the two C.D. Marketing mirrors (which were provided to General Motors by Gentex in 1987) were provided only for experimental use and not for public use or sale. Such statements are highly relevant to Gentex's claim in this litigation that the C.D. Marketing Mirrors were prior art. Thus, these admissions, which contradict Gentex's position in this case, are admissible under Federal Rule of Evidence 801(d)(2), as admissions against interests.

Therefore, the motion (Dkt. No. 516) will be granted only in part. Donnelly will be precluded from referring to the European Patent matter under Rules 401, 402 and 403 with the exception of these admissions against interests. Assuming that Donnelly does so, Gentex will be permitted to refer to the patent matter for the purpose of explaining the alleged admissions. Assuming that Gentex does so, then Donnelly will be permitted to contradict its testimony concerning the patent matter.

*D. Hearsay*

 Donnelly also has asked that Gentex not be permitted to introduce certain hearsay evidence concerning the quality of Donnelly products. The hearsay evidence in question consists of testimony of Gentex and Donnelly employees who will supposedly testify that Donnelly lost contracts on Rover and Jaguar auto mirrors because its products were inferior. *See* Deposition of Frederick Bauer of

February 10, 1995, at 285–86; Deposition of Ronald Velthoven of October 28, 1994, at 151–53. The hearsay relates to testimony that an unidentified employee of a customer (whom the parties do not intend to call as a witness, according to the November 8, 1995 Order of this Court) told Gentex employees that they would not purchase Donnelly prismatic electrochromic mirrors because they were of substandard quality. Donnelly asserts that such testimony is hearsay under Federal Rule of Evidence 801 and should be precluded.

Under Federal Rule of Evidence 801, a statement is hearsay if it is made: 1) out of court, 2) by a declarant (other than the witness then testifying) and 3) is offered for the truth of the matter asserted. R. 801(c); *Talley v. Bravo Pitino Restaurant Ltd.*, 61 F.3d 1241, 1249 (6th Cir.1995); *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir.1992). Given such definition, Gentex claims that the testimony of such witnesses will not be hearsay because it will not be offered to prove the truth of the matter asserted (that the Donnelly products were substandard), but rather to prove that the customers did not intend to purchase Donnelly products because they believed them to be substandard. Indeed, in light of such a purpose, the Court cannot at this time exclude the expected testimony under Rule 801. *See Talley, supra.*[6] Such a purpose is relevant to the issues in this matter too because the willingness of customers to purchase Donnelly products is directly relevant to the extent of its lost profit damages under Title 35 United States Code Section 284. Therefore, the motion *in limine* (Dkt. No. 532) will be denied since the Court cannot now determine that the statements will be offered for an improper purpose at trial. However, the Court notes that in denying this motion it reserves for trial the issue of whether specific statements of witnesses and statements in documents are hearsay—which will depend on the purpose for which those statements are offered at that time.

relating to the other litigations are pertinent to damage issues. Accordingly, this motion (Dkt. No. 510) shall also be denied.

6. *See also* Federal Rule of Evidence 803(3) and *Rite–Hite Corp. v. Kelley Co.*, 774 F.Supp. 1514, 1526 (E.D.Wis.1991), *aff'd in part*, 56 F.3d 1538 (Fed.Cir.1995).

■ Meanwhile, Gentex has asked this Court to preclude reference to or testimony concerning Donnelly's award of Chrysler Motors Quality awards as to its *non-electrochromic* rearview mirrors. Gentex claims that such testimony is not relevant to the patent infringement question nor the question of damages as to lost profits for *electrochromic* mirrors under Rule 401 and should be excluded from evidence under Rules 402 and 403. Gentex also notes that these quality awards do not even reflect Donnelly's current abilities to manufacture quality products because they were presented prior to 1990 (when Donnelly was not producing any electrochromic mirrors). Gentex also notes that there is a huge difference between the relatively simple, prismatic mirrors Donnelly has been presented awards for and the high-technology, electrochromic mirrors for which Donnelly has not received awards.

Gentex's argument, when placed in perspective, goes to the weight and not the admissibility of the quality awards. As mentioned previously, the issue of lost profit damages under 35 U.S.C. Section 284 is pertinent to this case as is the issue of whether Donnelly had the ability to supply comparable, high quality electrochromic mirrors in the place of the infringing sales. *Ryco, Inc. v. Ag–Bag Corp.*, 857 F.2d 1418, 1427 (Fed. Cir.1988). This being the case, the recognition of Donnelly for production of high quality auto mirrors by major auto manufacturers such as Chrysler is relevant to a legal issue in this case. While such evidence is not as relevant as would be awards for electrochromic mirrors, it is nevertheless relevant under Rule 401. Moreover, by making this argument, Gentex has shown its own ability to make clear to the jury that there are significant differences between electrochromic and non-electrochromic mirror technologies. Accordingly, there is an insufficient basis for excluding this evidence under Rule 403. Therefore, the motion *in limine* (Dkt. No. 515) will be denied.

### E. Manufacturing Methods

■ Donnelly has also raised the issue of whether to preclude Defendant Gentex from mentioning the facts that Donnelly uses Jap-

anese licensed technology and produces some of its products at an Irish manufacturing facility. This issue is highlighted by reference to a video which, allegedly, Gentex wishes to introduce at trial. The script of the video includes statements like, "The Electrochromic Formulation used in Gentex Mirrors is truly *Made in America.*" Motion Exhibit 1 (emphasis in original). This statement accompanies the video image of an America Flag flying at a Gentex factory. It is also followed by other script and videos showing Gentex's products marked as "Made in America." Accordingly, Donnelly asks that Gentex be precluded from making such references under Federal Rule of Evidence 403.

■ It is clear that the type of nationalistic rhetoric contained in the videotape and script are calculated to play on the jury's passions and prejudices and should be excluded at trial pursuant to Federal Rule of Evidence 403. However, this is not to say that Gentex will be completely foreclosed from mentioning the facts that Donnelly produces products in Ireland and uses Japanese technologies. Indeed, as is discussed later in this Opinion, there are major issues in this trial as to the lost profit damages of Donnelly and Donnelly's ability to manufacture additional products. These issues hinge upon the cost of producing the products to Donnelly, the costs of the transportation of the product, and the ability to use the plant in Ireland and the Japanese technology to meet additional production goals. Since these issues are relevant to this trial, reference to the location of the Irish plant and the Japanese technology for the purpose of bringing these issues to light will be permitted. However, references to "un-American products" or products not "Made in America" and similar types of references (which are unduly prejudicial under Rule 403) will be excluded at trial. Therefore, Donnelly's motion *in limine* (Dkt. No. 525) will be granted only in part.

### F. Expert Testimony

■ Donnelly has also filed motions *in limine* requesting that the Gentex's experts be precluded from testifying as to certain matters. First, Donnelly claims that Gen-

tex's experts intend to testify as to the law relating to lost profits and other purely legal matters. Second, Donnelly claims that Gentex intends to offer duplicative testimony from its experts relating to patent infringement, lost profits, royalties, and electro-optic devices. Donnelly asks that the Court limit the number of experts that Gentex will be allowed to call on each of these different subjects. Gentex responds by stating that it does not intend to have its experts either testify as to what the law is or give duplicative testimony.

Under Federal Rule of Evidence 704, an expert witness is permitted to testify in the form an opinion as to an "ultimate issue of fact." *United States v. Zipkin,* 729 F.2d 384, 386–87 (6th Cir.1984). In this case, such ultimate issues of fact include whether the claims of the '112 patent were infringed by Gentex products, whether those claims are valid, whether Donnelly meets the legal requirements to be awarded lost profit damages, and the amount of royalty which would be reasonable in this matter.[7] Nevertheless, the experts may not testify as to what the law is since it is the Court's job to instruct the jury as to what the law is. *Zipkin, supra; Molecular Technology Corp. v. Valentine,* 925 F.2d 910, 919 (6th Cir.1991). Therefore, such experts must walk a fine line: they must give their expert opinions on ultimate issues of fact, while explaining their own understandings of the law, but without purporting to give expert opinions as to what the law is. Gentex's briefs promise that their experts will walk this fine line and that they will not testify in a wasteful, duplicative manner. The Court will, therefore, for the meantime take Gentex at its word and not preclude from the outset such expert testimony. However, the Court will feel free to revisit this issue at trial if it appears later that the testimony is improper under Federal Rules of Evidence 403, 702 and 704. For the meantime, though, these motions *in limine* (Dkt. Nos. 534 and 535) will be denied.

7. In addition to Rule 704, 35 U.S.C. Section 284 expressly provides that, "The Court may receive expert testimony as an aid in the determination of damages or of what royalty would be reasonable under the circumstances."

### G. Previously Decided Issues

Finally, as to the substantive legal issues in this case, Donnelly asks that Gentex be precluded from offering evidence as to legal defenses which have been previously rejected on summary judgment motion by the Court. Specifically, Donnelly asks that Gentex not be permitted to introduce evidence of a failure to mark defense (under 35 U.S.C. Section 287(a)), that Gentex not be permitted to introduce evidence of certain unenforceability defenses, and that Gentex not be permitted to introduce evidence of an indefiniteness defense. The bases for these motions are the Court's prior findings as contained in the Court's previous Opinions of August 29, 1995 and November 16, 1995.

First, as to the marking defense, the Court has previously reviewed this evidence and determined that there is insufficient evidence under Rule 56 to warrant trial on this issue. This is true, even in light of the alleged newly discovered evidence advanced by Gentex. *See infra* at 28–30. Therefore, the Court determines as a matter of law that Donnelly adequately marked its '112 electrochromic mirrors beginning in March 1992. However, the Court's Opinions previously did not resolve the issue of whether prior to marking Gentex had actual notice of the patent. Since this issue is relevant to lost profit damages (*see American Medical Systems,* 6 F.3d at 1537), Gentex will be permitted to present evidence on this issue, but will not be permitted to introduce evidence concerning marking after March 1992.

Second, the issue as to certain unenforceability defenses now centers on a new defense which Gentex wishes to raise and which Donnelly wishes to preclude. This defense is premised on evidence of Donnelly's 1986–87 Solid–State Mirrors. However, the Magistrate Judge has previously denied discovery relating to such mirrors because the defense was not timely pled. Accordingly, even as of yet Gentex has insufficient knowledge of the defense which it wishes to assert and which was not timely pled. Under these circumstances, admission of evidence concerning

such a defense would undermine the fairness of the trial—which the Court has worked painstakingly to uphold. Accordingly, the motion *in limine* precluding reference to such defenses will be granted.

Third, Donnelly maintains that Gentex should not be permitted to introduce evidence to the effect that the patent claims here relevant (claims 44 and 50) are invalid because of indefiniteness. This Court previously denied Gentex's motion for summary judgment on the issue of indefiniteness because it did not appear from the evidence then presented that Gentex could establish indefiniteness by clear and convincing evidence under Title 35 United States Code Section 112. Generally, the question of definiteness under Section 112 is a question of law for the Court. *Credle v. Bond,* 25 F.3d 1566, 1576 (Fed.Cir.1994); *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613 (Fed.Cir.1985). To answer this question, the Court must view the evidence and make a determination of whether the claims read in light of the specification are sufficient to reasonably apprise one skilled in the art of the scope of the invention. *Miles Labs, Inc. v. Shandon, Inc.,* 997 F.2d 870, 875 (Fed.Cir.1993), *cert. den.,* — U.S. —, 114 S.Ct. 943, 127 L.Ed.2d 232 (U.S.1994). This Court has commented that it does not appear from the present evidence, claims and specification that Gentex will prevail as to this defense. Nevertheless, since the Court has not granted a motion for summary judgment on this issue, Gentex is free to present expert testimony concerning the trade so as to further inform the Court's decision on this matter. Accordingly, Donnelly's motion *in limine* on this issue will be denied. Overall, Donnelly's motion *in limine* (Dkt. No. 540) will be granted in part and denied in part as stated in this Opinion.

## IV.

Among other things, both parties have filed several motions relating to evidence to establish lost profit damages. Generally speaking, a plaintiff who proves infringement is entitled under Section 284 of Title 35 of the United States Code to be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. Sec. 284. A party will be entitled to proof of lost profits if it can show by a preponderance: (1) a demand for the product during the time in question; (2) an absence, during this period, of acceptable noninfringing substitutes; (3) its own ability to meet that demand; and (4) a detailed computation of its lost profits. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir.1978); *Rite–Hite, supra* at 1545; *Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 671–72 (Fed.Cir.1988), *cert. den.,* 488 U.S. 968, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988). Donnelly contends that it has lost profits of 12.11 million dollars on the sale 1.7 million outside electrochromic mirrors. It also calculates it is owed a royalty of 6.4 million dollars for the use of its inside electrochromic mirrors (a figure which equals 3 to 4 percent of Gentex's revenue on the allegedly infringing inside mirrors sold).

First of all, Gentex asks that Donnelly be completely foreclosed from seeking lost profit damages under Section 284. The basis for this request is Gentex's argument that Donnelly cannot establish proof of the lost profits and that Donnelly was at fault in prior discovery for failing to provide Gentex with information concerning its abilities to produce outside electrochromic mirrors.

This motion simply is the wrong method of seeking relief. If Plaintiff cannot establish the elements of a lost profit claim at trial, then Defendant would be entitled to a directed verdict as to that claim under Federal Rule of Civil Procedure 50. However, until such time as a directed verdict is warranted, the legal issue of lost profit damages (and the elements of such a claim) has been sufficiently pled and contested such that the Court will permit evidence concerning it as relevant to a material issue in this cause pursuant to Federal Rules of Evidence 401 and 403. Similarly, Defendant's request to limit this evidence as a discovery sanction is not warranted. The Magistrate Judge previously determined by his Order and Opinion of November 8, 1995 that Donnelly had provided sufficient answers to Gentex's requests for discovery

relating to cost product records. This determination was consistent with the evidence and practice in prior cases and will be upheld. Therefore, Gentex's motion *in limine* (Dkt. No. 519) will be denied.

■ Relating to such damages, Donnelly has also requested an order determining that the market for electrochromic mirrors was a two-supplier market (itself and Gentex) and preventing Gentex from offering evidence that there were other suppliers. Donnelly's motion is based on the fact that in a prior litigation concerning a Gentex patent on outside electrochromic mirrors the jury awarded damages to Gentex in the amount of $2,200,683.33. While such a determination makes slightly more likely the proposition that this market is a two-supplier market, it does not assure it because lost profit damages are available even in markets with more than two suppliers. *See Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1223 (Fed.Cir.1995); *King Instruments Corp. v. Perego*, 65 F.3d 941, 953 (Fed.Cir.1995). Furthermore, it is significant to note that the prior law suit covered only *outside* electrochromic mirrors produced from 1992 to 1993 such that even if there were a determination that such was a two-supplier market that determination would not necessarily apply to the market involved in this case. Accordingly, Donnelly's motion *in limine* (Dkt. No. 527) should be denied.

■ Gentex also contends, with respect to the lost profit damages, that Donnelly should be precluded from offering evidence relating to its ability to manufacture outside electrochromic mirrors before June 1995. This contention is based on Donnelly's alleged failure to comply with the Court's Order of November 8, 1995 requiring Donnelly to exchange Rover mirror assemblies. Interestingly, Donnelly has also moved to enforce the November 8, 1995 Order and requested that Gentex be precluded from offering evidence relating to Donnelly's ability to manufacture outside mirrors because of Gentex's failure to produce a Rover outside mirror assembly. It appears from the briefing as to both of these motions that the November 8, 1995 Order never clearly ordered the parties to exchange the mirrors because the parties had voluntarily agreed to exchange the mirrors; it also appears that there was a breakdown as to this agreement because Gentex wanted Donnelly mirrors from early 1985 (a time concerning which Gentex believed that Donnelly was unable to produced quality mirrors) and Donnelly would not produce mirrors identified as manufactured during such dates. Therefore, it appears that the parties simply are stuck in a discovery quagmire of their own making, which could have been avoided by clearer and more explicit stipulations. In any event, it is clear that neither party has established a violation of Rule 26 and 37 sufficient to justify the serious sanctions now requested.[8] Accordingly, these motions *in limine* (Dkt. Nos. 493 and 505) will be denied.[9]

■ Next, Gentex contends that Donnelly should not be permitted to introduce evidence of Gentex's profits for the relevant years because such profits are irrelevant to the issues being tried and would likely confuse the jury. This motion, to the extent that it makes sense at all, is premised on the legal proposition that damages in patent cases are intended to make the plaintiff whole, rather than to punish the Defendant for its profits. *See Aro Mfg., supra* at 507; *Pall, supra* at 1223. However, in so arguing, Gentex appears to have forgotten its other assertion that Donnelly should not be compensated for "lost profits." If this is true, then Plaintiff's damages under Title 35 United States Code Section 284 would be limited

---

**8.** It also clear that Donnelly has not established any discovery violation with respect to production of Gentex's research notebooks. In discovery, portions of those notebooks were redacted so as to protect confidential research into new products. This was done with the knowledge and implied approval of the Magistrate Judge such that Donnelly cannot now claim that the redactions constitute a violation of the November 8, 1995 Order.

**9.** Gentex has also filed a motion to preclude Donnelly from offering evidence of Gentex's manufacturing yields because of suspected discovery violations. However, there is insufficient evidence of a discovery violation to warrant such a sanction. Accordingly, this motion (Dkt. No. 511) will also be denied.

to a "reasonable royalty" for the use of the patent. In calculating this royalty, as a matter of law, the jury is entitled to consider evidence of the infringer's actual profits. *Georgia Pacific, supra* at 1120; *Rite–Hite, supra* at 1554–55. To the extent that such evidence is confusing, it can be made understandable to the jury by the Court's legal instructions to the jury and the expected effort of counsel in clarifying the issues. Therefore, assuming Gentex's own assertions, its legal argument for this motion *in limine* is incorrect. Accordingly, this motion (Dkt. No. 518) will be denied.

■ Next, Gentex asks the Court to limit Donnelly's damages to sales occurring after this suit was instituted because of Donnelly's failure to mark the '112 patent mirrors. This issue is not new to the Court since in September of 1995 the Court granted summary judgment on the marking defense to Donnelly since the evidence filed then showed that 96.79 percent of the '112 patent mirrors sold by Donnelly were properly marked. Gentex now asks for reconsideration of the summary judgment motion in light of additional evidence which it has filed which purports to show that between 1991 and 1993 Donnelly failed to mark 31.96 percent of the '112 patent mirrors which it sold (1560 of the 4880 mirrors then sold).

■ Essentially, the arguments now raised by Gentex were previously raised and considered at the time the summary judgment motion was decided. Gentex has simply brought to the Court's attention that by calculating a percentage based on very early sales of the mirrors the percentage of unmarked mirrors becomes much higher. Such a rhetorical device is now as unpersuasive as it was earlier. The law on marking expressly permits a delay between early production and marking provided that once marking begins it is consistent. Since in this case mark-

ing began and was consistent beginning in March of 1992, then Gentex as a matter of law had sufficient notice of Donnelly's patent claims beginning in March 1992. The delay of marking until March 1992 was a reasonable delay because the '112 patent did not issue until November 19, 1991. Since the products produced after that date were consistently marked, the Court determines (as it did previously) that those products were adequately marked and are not subject to a marking defense under Title 35 United States Code Section 287. As for the products produced before March 1992, the case law is clear that lost profits for infringing sales before marking begins are recoverable provided that the infringer has actual notice of the patent and infringement. *American Medical Systems, supra* at 1537; *Maxwell v. J. Baker, Inc.,* 875 F.Supp. 1371 (D.Minn. 1995). Therefore, with respect to the damages before March 1992, the Court will permit proof of such damages for consideration by the jury subject to an instruction as to notice. Accordingly, Defendant Gentex's motion *in limine* (Dkt. No. 508) will be denied.[10]

■ Next, Defendant Gentex contends that Plaintiff Donnelly should not be permitted to introduce testimony concerning "new contract damages." Gentex's argument is that Donnelly did not give notice in this law suit that it intended to seek damages based on Gentex's long-term, future contract with General Motors for 1997 and 1998 model year vehicles. Because of this alleged failure, Gentex argues, it would be unfair for Donnelly to seek these damages because Gentex has not sought discovery concerning such damages.

Relating to such argument, it is clear from the history of discovery in this case that some of Gentex's discovery problems are of its own making. Donnelly had requested in early discovery a copy of the contract in question. However, such was not produced until after November 20, 1995—when the Court ordered Gentex to produce it. The contract itself was not signed until March

---

**10.** Similarly, both parties' requests for sanctions in connection with this motion shall be denied since the Court determines that both parties have been legitimately asserting and defending defensible legal positions.

1995 and a signed copy was not produced in discovery until December 1995. Therefore, it appears from the history of discovery that Donnelly did not unduly delay in seeking discovery in this matter, and that Gentex was apprised as soon as was possible of Donnelly's theory on the contract damages.[11] Therefore, the motion *in limine* (Dkt. No. 520) will be denied.

## V.

Therefore, the Court shall enter an Order consistent with this Opinion, disposing of the motions *in limine* as indicated above.

## ORDER

In accordance with the Court's Opinion of this date;

**IT IS HEREBY ORDERED** that Gentex's motion to preclude reference to presumption of validity (Dkt. No. 517) is **DENIED**.

**IT IS FURTHER ORDERED** that Gentex's motion to preclude evidence of infringement concerning wide bezel mirrors (Dkt. No. 513) is **DENIED**.

**IT IS FURTHER ORDERED** that Donnelly's motion to preclude reference to bezel differences (Dkt. No. 523) is **GRANTED IN PART AND DENIED IN PART** (as directed by the Court's Opinion).

**IT IS FURTHER ORDERED** that Gentex's motion to preclude evidence as to Federal Safety Standard No. 111 (Dkt. No. 514) is **DENIED**.

**IT IS FURTHER ORDERED** that Donnelly's motion to preclude evidence of settlements (Dkt. No. 530) is **GRANTED**.

**IT IS FURTHER ORDERED** that Donnelly's motion to preclude reference to prior patent litigations (Dkt. No. 528) is **DENIED**.

**IT IS FURTHER ORDERED** that Gentex's motion to preclude reference to prior patent litigations (Dkt. No. 510) is **DENIED**.

**IT IS FURTHER ORDERED** that Gentex's motion to limit evidence concerning lost profit damages (Dkt. No. 507) is **DENIED**.

**IT IS FURTHER ORDERED** that Donnelly's motion to preclude reference to European Patent Matters (Dkt. No. 516) is **GRANTED IN PART AND DENIED IN PART** (as directed by the Court's Opinion).

**IT IS FURTHER ORDERED** that Donnelly's motion to preclude certain evidence concerning the quality of its products (Dkt. No. 532) is **DENIED**.

**IT IS FURTHER ORDERED** that Gentex's motion to preclude reference to auto awards (Dkt. No. 515) is **DENIED**.

**IT IS FURTHER ORDERED** that Donnelly's motion to preclude reference to Irish plant and Japanese technology (Dkt. No. 525) is **GRANTED IN PART AND DENIED IN PART** (as directed in the Court's Opinion).

**IT IS FURTHER ORDERED** that Donnelly's motions to preclude expert testimony (Dkt. Nos. 534 and 535) are **DENIED**.

**IT IS FURTHER ORDERED** that Donnelly's motions to preclude evidence on previously decided issues (Dkt. No. 540) is **GRANTED IN PART AND DENIED IN PART** (as directed in the Court's Opinion).

**IT IS FURTHER ORDERED** that Gentex's motion to preclude all evidence of lost profit damages (Dkt. No. 519) is **DENIED**.

**IT IS FURTHER ORDERED** that Donnelly's motion to preclude evidence of other suppliers (Dkt. No. 527) is **DENIED**.

**IT IS FURTHER ORDERED** that Gentex's motion to preclude evidence of lost profit damages prior to June 1995 (Dkt. No. 493) is **DENIED**.

**IT IS FURTHER ORDERED** that Donnelly's motion to preclude evidence concerning Donnelly's inability to manufacture outside mirrors (Dkt. No. 505) is **DENIED**.

---

11. Incidentally, the Court notes that these lost profit damages amount to $2,185,499, or just 12 percent of the total damages claimed in the litigation.

1142

IT IS FURTHER ORDERED that Gentex's motion to preclude evidence of Gentex's manufacturing yields (Dkt. No. 511) is **DENIED.**

IT IS FURTHER ORDERED that Gentex's motion to preclude evidence concerning its profits (Dkt. No. 518) is **DENIED.**

IT IS FURTHER ORDERED that Gentex's motion to preclude evidence concerning lost profits to profits after suit was filed (Dkt. No. 508) is **DENIED.**

IT IS FURTHER ORDERED that Gentex's motion to preclude evidence of "new contract damages" (Dkt. No. 520) is **DENIED.**